**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

JUSTIN M. HICKOX,

                    Plaintiff,                          CIVIL ACTION NO. 3:20-CV-00980

        v.                                              (MEHALCHICK, M.J.)

LT. BERNIE KARABINOS, et al.,

                    Defendant.

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment filed by Plaintiff Justin M Hickox ("Hickox") on November 25, 2020, in a civil rights action arising from his complaint of sexual harassment and the ensuing discipline. (Doc. 17). For the reasons set forth herein, the Court **DENIES** Hickox's Motion for Summary Judgment.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

On February 28, 2020, Hickox initiated the instant action by filing the original Complaint against eight employees of the State Correctional Institution at Benner Township (SCI-Benner) and the Pennsylvania Department of Corrections in the Court of Common Pleas of Centre County, Pennsylvania. (Doc. 1-1, at 5-7). Defendants removed the case to this Court on June 17, 2020. (Doc. 1). On August 5, 2020, Defendant files a Motion to Dismiss, to which Hickox responded with a Motion to Amend. (Doc. 6; Doc. 7). Hickox filed his Amended Complaint on August 27, 2020, naming only Captain Foster and Lieutenant Bernie Karabinos as the Defendants. (Doc. 10). This Amended Complaint ("the Complaint") stands as the operative complaint in this matter. (Doc. 10).

As alleged in the Complaint, Hickox, while housed at SCI-Benner, submitted a written complaint of sexual abuse under the Prison Rape Elimination Act. (Doc. 10, ¶ 1). After investigating the complaint, Hickox was placed in the Restricted Housing Unit due to a charge of Lying to an Employee. (Doc. 10, ¶¶ 27-30). The misconduct report that was issued to Hickox stated that his complaint was "unfounded," and he was sentenced to 30 days in the Restricted Housing Unit. (Doc. 10, ¶¶ 31, 33). Hickox alleges that Defendants failed to adhere to Department of Corrections ("DOC") policy regarding disciplining mentally ill inmates. (Doc. 10, ¶¶ 34-40). Furthermore, Hickox alleges that Defendant Karabinos manufactured the status of the complaint as "unfounded" by telling Hickox's accuser what to write in his statement. (Doc. 10, ¶¶ 52-54). Hickox claims that his First and Eighth Amendment rights were violated as a result of Defendants' conduct. (Doc. 10, ¶ 56).

Following a period of discovery, Hickox has moved for summary judgment. (Doc. 17). This motion has been fully briefed and is now ripe for disposition. (Doc. 19; Doc. 31).

## II.   MOTION FOR SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the

non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See*

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential).

III.    **STATEMENT OF FACTS**

This factual background is taken from Hickox's statement of facts and admissible evidence in the record. (Doc. 18; Doc. 21; Doc. 28). Where a statement is disputed and not supported by evidence in the record, the Court shall not take that fact as true.[1] Defendants responded with their statement of material facts pursuant to Local Rule 56.1 on January 4, 2021. (Doc. 29). The facts have been taken in the light most favorable to the Defendants as the non-moving party, with all reasonable inferences drawn in their favor.

Hickox arrived at SCI-Benner on December 28, 2015. (Doc. 18, ¶ 1; Doc. 29, ¶ 1). Hickox states that he was housed in the general population and not any other special housing, such as RTU or SNU, during his time at SCI-Benner. (Doc. 18, ¶ 2). However, Defendants submit evidence that Hickox was housed in the Restricted Housing Unit ("RHU") from March 4, 2016, to March 14, 2016.[2] (Doc. 29, ¶ 2; Doc. 21-6, at 3). Hickox had multiple employments, including in the kitchen and the laundry. (Doc. 18, ¶ 3; Doc. 29, ¶ 3). Upon reception to the Pennsylvania DOC, Hickox was designated an inmate with mental health needs. (Doc. 18, ¶ 4; Doc. 29, ¶ 4). As a result of his designation as a mental health inmate, Hickox was assigned a C mental health code. (Doc. 18, ¶ 5; Doc. 29, ¶ 5). In August 2019,

---

[1] Hickox does not support any of his stated facts with references to evidence in the record. (Doc. 18). "It is counsel's responsibility to the Court, and not the Court's independent obligation, to support Plaintiff's allegations with evidence of record." *Yan Yan v. Penn State University*, 2012 WL 3201888, at *5 n.5 (M.D. Pa. Aug. 3, 2012).

[2] This time period is well before the time period at issue. (Doc. 18, ¶¶ 6-45; Doc. 29, ¶¶ 6-45).

4

Hickox was employed in the pots and pans area of the Dietary Department at SCI-Benner. (Doc. 18, ¶¶ 6, 7; Doc. 29, ¶¶ 6, 7). Plaintiff states that this position allowed him unsupervised access to cleaning equipment and tools, yet Defendants submit evidence that Hickox generally worked under supervision. (Doc. 18, ¶ 8; Doc. 29, ¶ 8; Doc. 28-1, at 6-7).

On August 22, 2019, Hickox made a verbal report of sexual harassment and sexual abuse against inmate Nicholas Lazor to Sgt. Carmack, who was the ranking officer on G-Unit, a housing unit for general population inmates. (Doc. 18, ¶ 9; Doc. 29, ¶ 9). Once the verbal report was received by Sgt. Carmack, Carmack notified Lieutenant McCoy of the allegation. (Doc. 18, ¶ 10; Doc. 29, ¶ 10). On August 22, 2019, at 2:20 p.m., Lieutenant McCoy interviewed Hickox regarding his allegations. (Doc. 18, ¶ 11; Doc. 29, ¶ 11). At the end of the verbal report, Lieutenant McCoy instructed Hickox to complete a written statement. (Doc. 18, ¶ 12; Doc. 29, ¶ 12).

Hickox's allegations were that on two occasions within the previous month, Lazor had kissed Hickox and groped the genitals of Hickox. (Doc. 18, ¶ 13; Doc. 29, ¶ 13). Defendants add that though Hickox alleged two separate occasions of sexual abuse, he could only provide one date on which abuse occurred. (Doc. 29, ¶ 13; Doc. 21-7, at 4). Hickox's allegation was that Lazor would call PREA on Hickox if money was not placed on his books, or account. (Doc. 18, ¶ 14; Doc. 29, ¶ 14). Hickox states that to meet Lazor's demand and avert a possible PREA complaint against him, Hickox contacted his family to have money placed in Lazor's account. (Doc. 18, ¶ 15). Defendants deny this statement and Hickox identifies no evidence to support it. (Doc. 18, ¶ 15; Doc. 29, ¶ 15). Hickox states that he filed a complaint that Lazor forged a cash slip in the amount of $350.00 to be withdrawn from Hickox's account and placed in the account of Lazor. (Doc. 18, ¶ 16). Defendants deny this statement and Hickox

identifies no evidence to support it. (Doc. 18, ¶ 16; Doc. 29, ¶ 16).

Once Hickox's verbal and written complaints were made, he and Lazor were assessed by the Medical Department for any injuries. (Doc. 18, ¶ 17; Doc. 29, ¶ 17). After no injuries were reported, Lazor was placed in the Restricted Housing Unit pending the outcome of the investigation. (Doc. 18, ¶ 18; Doc. 29, ¶ 18). Hickox submits that during the investigation, he would meet regularly with Bernie Karabinos to discuss the status of the investigation. (Doc. 18, ¶ 19). Defendants deny this statement as they are without sufficient information or knowledge to ascertain what Hickox means by "regularly." (Doc. 29, ¶ 19). During the investigation, Karabinos would tell Hickox that there was no outcome yet. (Doc. 18, ¶ 20; Doc. 29, ¶ 20).

In November 2019, Hickox was reclassified as a D-Score inmate with a serious mental illness of Major Depression. (Doc. 18, ¶ 21; Doc. 29, ¶ 21). Hickox states that this diagnosis and D-Score status were issued after a psychiatrist at SCI-Benner contacted Hickox's psychiatrist, had a consultation, and sent medical records. (Doc. 18, ¶ 22). Defendants deny this statement and Hickox identifies no evidence to support it. (Doc. 18, ¶ 22; Doc. 29, ¶ 22).

On December 2, 2019, Hickox was escorted to the Disciplinary Housing Unit from his housing unit in General Population for a misconduct. (Doc. 18, ¶ 23; Doc. 29, ¶ 23). The misconduct, authored by Karabinos, charged Hickox with lying to an employee. (Doc. 18, ¶ 24; Doc. 29, ¶ 24). The misconduct report states that the outcome of the investigation of the PREA was unfounded. (Doc. 18, ¶ 25; Doc. 29, ¶ 25). The misconduct was reviewed by Captain Foster, who was the Shift Commander on duty. (Doc. 18, ¶ 26; Doc. 29, ¶ 26). Hickox states that this charge is a Class II charge eligible for informal resolution. (Doc. 18, ¶ 27). Defendants submit evidence that this charge is a Class I charge eligible for informal resolution.

(Doc. 29, ¶ 27; Doc. 21-8, at 15).

The misconduct incident date was August 18, 2019, at 6:00 p.m. (Doc. 18, ¶ 28; Doc. 29, ¶ 28). The date that the verbal report was made was August 22, 2019. (Doc. 18, ¶ 29; Doc. 29, ¶ 29). Without identifying evidence in support, Hickox avers that the incident date and time on the misconduct is incorrect. (Doc. 18, ¶ 30). Defendants deny this averment, clarifying that the reference to August 18, 2019, was for the date Hickox complained he was abused by Lazor. (Doc. 29, ¶ 30). Hickox asserts that the misconduct was served on him more than ninety days after the incident date, though he provides no evidence in support. (Doc. 18, ¶ 31). Defendants deny this assertion. (Doc. 29, ¶ 31). At the time the misconduct was issued, Hickox was a D-Score inmate and classified as an inmate with a serious mental illness. (Doc. 18, ¶ 32; Doc. 29, ¶ 32).

DC-ADM-801 governs the disciplinary process for inmates in the custody of the Pennsylvania DOC. (Doc. 18, ¶ 33; Doc. 29, ¶ 33). DC-ADM-801, Section 1.3 states, "The DC-141, Part 1 shall be written and submitted to the Shift Commander of Officer-In-Charge before the tour of duty concludes, the same day/shift that the charging staff member or contract service provider has knowledge of the violation. If not, the report shall include a justification for the delay." (Doc. 18, ¶ 34; Doc. 29, ¶ 34). The misconduct report was issued on August 18, 2019, and held until the PREA investigation was completed. (Doc. 18, ¶ 35; Doc. 29, ¶ 35). Per the investigative summary, the investigation was completed in November 2019. (Doc. 18, ¶ 36; Doc. 29, ¶ 36). Per DC-ADM-801, the misconduct report shall be served on the inmate the same day that it is written. (Doc. 18, ¶ 37; Doc. 29, ¶ 37). Defendants add that the policy allows for the misconduct charge to not be served the same day it is written as long as justification is provided on the DC-141, Part 1. (Doc. 29, ¶ 37).

7

DC-ADM-801 Section 4.1 states,

> If the inmate is carried on the active MH Roster and the misconduct is non-violent in nature (i.e. charges #26-52), the Shift Commander will refer the misconduct for informal resolution except in cases where the Shift Commander determines after investigation that the nature of the misconduct warrants a formal hearing. In such cases, the Shift Commander must provide material justification for his/her decision. A material justification must include specific articulated details about why the behavior/incident presented an imminent security risk to the orderly operation of the facility.

(Doc. 18, ¶ 39; Doc. 29, ¶ 39).

Defendants add that if the inmate is a juvenile or carried on the active MH/ID Roster, and the misconduct is non-violent in nature, the Shift Commander will refer the misconduct for informal resolution except in cases where the Shift Commander determines after the investigation that the nature of the misconduct warrants a formal hearing. If the Hearing Examiner determines that the justification is insufficient, the referral for formal hearing will be denied. (Doc. 29, ¶ 39; Doc. 21-8, at 9-10).

Hickox states that he was charged with lying to an employee, which is non-violent in nature and was not an imminent security risk to the orderly operation of the facility, especially since the misconduct was issued more than ninety days after the date of the incident. (Doc. 18, ¶ 40). Defendants admit that Hickox was charged with lying to an employee but deny that he was not an imminent security risk to the orderly operation of the facility since the investigation found that he attempted to mislead the investigator. (Doc. 29, ¶ 40).

Hickox was placed on pre-hearing confinement. (Doc. 18, ¶ 41; Doc. 29, ¶ 41). DC-ADM-801, Section 1.E, states, "Before utilizing pre-hearing confinement with inmates on the active MH roster, all other alternative measures should be explored." (Doc. 18, ¶ 42; Doc. 29, ¶ 42). Captain Foster was aware of the mental health status of Hickox and indicated his

awareness on the Mental Health Disciplinary Disposition Form as required by DC-ADM-801. (Doc. 18, ¶ 43; Doc. 29, ¶ 43).

DC-ADM-801 Section 2.a.1 states, "The rule violation charges eligible for informal resolution are: ALL class I and II charges #26-53 for inmates being carried on the active MH roster." (Doc. 18, ¶ 44; Doc. 29, ¶ 44). Hickox asserts that due to his placement in the DTU, he reported to psychology staff that his major depression and anxiety were getting worse every day. (Doc. 18, ¶ 45). Defendants deny this statement, and Hickox identifies no record evidence in support. (Doc. 18, ¶ 45; Doc. 29, ¶ 45).

## IV.   DISCUSSION

Hickox asserts a federal civil rights claim brought pursuant to 42 U.S.C. § 1983. Section 1983 provides a private cause of action with respect to violations of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

> 42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To make a § 1983 claim, a plaintiff must establish that a defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). Hickox brings claims under the First and Eighth

9

Case 3:20-cv-00980-KM   Document 32   Filed 04/07/21   Page 10 of 12

Amendments of the United States Constitution. (Doc. 10, at 8-11).[3] These protections are incorporated against state actors through the substantive due process clause of the Fourteenth Amendment. *Louisiana ex rel. Francis v. Resweber,* 329 U.S. 459, 463 (1947).

A. THE MISCONDUCT ISSUED TO HICKOX DID NOT VIOLATE HIS EIGHTH
AMENDMENT RIGHTS

Hickox submits that his rights under the Eighth Amendment were violated when he was confined to RHU as a seriously mentally ill inmate. (Doc. 19, at 5). According to Hickox, the United States Department of Justice ordered the DOC to cease confining seriously mentally ill inmates to RHU for minor rule infractions. (Doc. 19, at 5). Such conduct violates the Eighth Amendment right to be free from cruel and unusual punishment. (Doc. 19, at 5). Defendants assert that the record evidence shows Hickox was not sent to the RHU, but rather to the Diversity Treatment Unit ("DTU") as a result of his misconduct. (Doc. 31, at 12). This disciplinary custody did not violate Hickox's constitutional rights "because it does not present a type of confinement that is atypical of prison conditions," and it did not deny him basic human needs. (Doc. 31, at 12). Furthermore, Defendants state that they did not have a sufficiently culpable state of mind because this treatment is "something that is routinely done for inmates who violate prison rules." (Doc. 31, at 12-13).

To establish an Eighth Amendment conditions of confinement claim, a plaintiff must show that he was deprived of "the minimal civilized measure of life's necessities." *Young v.*

---

[3] Hickox purports to assert a violation of his procedural due process rights in his Brief in Support of his Motion for Summary Judgment. (Doc. 19, at 2-4). No such claim appears in his Amended Complaint, so the Court will not consider the procedural due process argument at this juncture. (Doc. 10); *see McMahon v. Salmond,* 573 F. App'x 128, 135 (3d Cir. 2014) (affirming a district court's decision not to consider the plaintiff's retaliation claim in a case where the district court concluded that the plaintiff had not pleaded such a claim in the operative complaint).

*Quinlan,* 960 F.2d 351, 359 (3d Cir.1992). "The Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs, such as the basic human need for reasonable safety, adequate physical space, and the need for some degree of ventilation and fresh air." *Caldwell v. Luzerne County Corrections Facility Management Employees*, 732 F. Supp. 2d 458, 470 (M.D. Pa. 2010) (citing *Helling v. McKinney,* 509 U.S. 25, 32, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)). However, the Eighth Amendment does not mandate that prisons be free of discomfort. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citing *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). "No static test determines whether conditions of confinement are 'cruel and unusual.' These terms must 'draw [their] meaning from the evolving standards of decency that mark the progress of a maturing society.'" *Tillery v. Owens,* 719 F.Supp. 1256, 1261 (W.D.Pa.1989) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)).

The plaintiff must prove that (1) the deprivation was sufficiently serious; and (2) the prison official acted with deliberate indifference in subjecting him to that deprivation. *Griffin v. Vaughn,* 112 F.3d 703, 709 (3d. Cir.1997). Deliberate indifference is subjective and requires that defendants know of and disregard an excessive risk to health and safety. *Johnson v. Wetzel,* 209 F. Supp. 3d 766, 778-79 (M.D. Pa. 2016). To infer such knowledge, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir. 2001) (quoting *Farmer,* 511 U.S. at 837).

11

It is undisputed that Hickox was placed in the Disciplinary Housing Unit as a result of being charged with lying to an employee. (Doc. 18, ¶¶ 23, 24; Doc. 29, ¶¶ 23, 24). At the time of this placement, Hickox was a D-Score inmate and classified as an inmate with a serious mental illness. (Doc. 18, ¶ 32; Doc. 29, ¶ 32). This is not enough to establish that Hickox was deprived of "the minimal civilized measure of life's necessities." *See Young,* 960 F.2d at 359. The record does not show that Hickox did not receive adequate mental health care, nor that his mental health deteriorated as a result of his placement in the Disciplinary Housing Unit. (Doc. 18). Though he states that his mental health worsened, Hickox provides no evidence to show that it did. (Doc. 18, ¶ 45). Furthermore, Hickox does not present evidence as to the length of time he was in the Disciplinary Housing Unit. (Doc.18). Without evidence of the duration and conditions of Hickox's confinement, nor the effect on his health, summary judgment in Hickox's favor is not warranted.[4] *See Stanford v. Walton*, 2019 WL 5068666, at *13 (W.D. Pa. Oct. 9, 2019) (quoting *Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1992) *superseded on other grounds by*, Prison Litigation Reform Act, 42 U.S.C. § 1997, *et seq.*

V.   **CONCLUSION**

For the reasons set forth in this Memorandum Opinion, Hickox's Motion for Summary Judgment is **DENIED.** (Doc. 17).

An appropriate Order shall follow.

Dated: April 7, 2021                                    *s/ Karoline Mehalchick*

                                                        **KAROLINE MEHALCHICK**
                                                        **United States Magistrate Judge**

---

[4] The Court notes that Hickox did not address his First Amendment and retaliation claims in his Motion for Summary Judgment. (Doc. 17; Doc. 19).