# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUSTIN M. HICKOX, | |
| Plaintiff, | CIVIL ACTION NO. 3:20-CV-00980 |
| v. | (MEHALCHICK, M.J.) |
| LT. BERNIE KARABINOS, et al., | |
| Defendant. | |

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment filed by Defendants Captain Foster and Lt. Bernie Karabinos ("Defendants") on December 10, 2020. (Doc. 20). This civil rights action arises from Plaintiff Justin M. Hickox's allegations of sexual harassment and improper ensuing discipline. (Doc. 10). For the reasons set forth herein, the Court **GRANTS** Defendants' Motion. (Doc. 20).

I. **BACKGROUND AND PROCEDURAL HISTORY**

On February 28, 2020, Hickox initiated the instant action by filing the original Complaint against eight employees of the State Correctional Institution at Benner Township (SCI-Benner) and the Pennsylvania Department of Corrections in the Court of Common Pleas of Centre County, Pennsylvania. (Doc. 1-1, at 5-7). Defendants removed the case to this Court on June 17, 2020. (Doc. 1). On August 5, 2020, Defendants filed a Motion to Dismiss, to which Hickox responded with a Motion to Amend. (Doc. 6; Doc. 7). Hickox filed his Amended Complaint on August 27, 2020, naming only Captain Foster and Lieutenant Bernie Karabinos as the Defendants. (Doc. 10). This Amended Complaint ("the Complaint") stands as the operative complaint in this matter. (Doc. 10).

As alleged in the Complaint, Hickox, while housed at SCI-Benner, submitted a written complaint of sexual abuse under the Prison Rape Elimination Act. (Doc. 10, ¶ 1). After investigating the complaint, Hickox was placed in the Restricted Housing Unit due to a charge of Lying to an Employee. (Doc. 10, ¶¶ 27-30). The misconduct report that was issued to Hickox stated that his complaint was "unfounded," and he was sentenced to 30 days in the Restricted Housing Unit. (Doc. 10, ¶¶ 31, 33). Hickox alleges that Defendants failed to adhere to Department of Corrections ("DOC") policy regarding disciplining mentally ill inmates. (Doc. 10, ¶¶ 34-40). Furthermore, Hickox alleges that Defendant Karabinos manufactured the status of the complaint as "unfounded" by telling Hickox's accuser what to write in his statement. (Doc. 10, ¶¶ 52-54). Hickox claims that his First and Eighth Amendment rights were violated as a result of Defendants' conduct. (Doc. 10, ¶ 56).

Following a period of discovery, Defendants now move for summary judgment. (Doc. 20). This motion has been fully briefed and is now ripe for disposition. (Doc. 22; Doc. 26; Doc. 30).

II.     **MOTION FOR SUMMARY JUDGMENT STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the

2

non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See*

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential).

III. **STATEMENT OF FACTS**

This factual background is taken from Defendants' Statement of Facts and admissible evidence in the record. (Doc. 23; Doc. 21; Doc. 28). Where a statement is disputed and not supported by evidence in the record, the Court shall not take that fact as true. Hickox responded with his statement of material facts pursuant to Local Rule 56.1 on January 4, 2021.[1] (Doc. 27). The facts have been taken in the light most favorable to Hickox as the non-moving party, with all reasonable inferences drawn in his favor.

Hickox is incarcerated by the Pennsylvania Department of Corrections ("DOC"). (Doc. 23, ¶ 1; Doc. 27, ¶ 1). The events alleged in Hickox's Complaint occurred at SCI-Benner Township ("SCI-Benner"). (Doc. 23, ¶ 2; Doc. 27, ¶ 2). On August 22, 2019, Hickox made a report of sexual abuse by another inmate and indicated he needed to file a Prison Rape Elimination Act ("PREA") complaint. (Doc. 23, ¶ 3; Doc. 27, ¶ 3). At the time, Defendants believed Hickox was classified as having a C Code stability rating. (Doc. 23, ¶ 4; Doc. 27, ¶ 4). Hickox's allegation of sexual abuse was investigated by Lt. Karabinos. (Doc. 23, ¶ 5; Doc. 27, ¶ 5). On September 25, 2019, Lt. Karabinos determined the allegation of sexual abuse to be unfounded. (Doc. 23, ¶ 6; Doc. 21-7, at 3-5).

Hickox is currently classified as a D stability score. (Doc. 23, ¶ 7; Doc. 21-2, at 7). On November 27, 2019, the Bureau of Investigations and Intelligence determined the

---

[1] Hickox includes responsive statements of material facts – all "admitted" – to only five of Defendants 15 enumerated paragraphs. (Doc. 23; Doc. 27). Still, since Hickox is *pro se*, the Court shall ensure that the record supports Defendants' statements prior to taking them as true.

investigation of sexual abuse and sexual harassment to be satisfactory. (Doc. 23, ¶ 8; Doc. 21-7, at 2). In accordance with DC-ADM 008, an investigation that results in determination of false allegations requires the issuance of DC-141, Part 1. (Doc. 23, ¶ 9; Doc. 21-5, at 2). On December 2, 2019, Hickox was issued a charge of misconduct for reporting false allegations. (Doc. 23, ¶ 10; Doc. 21-5, at 2). On December 2, 2019, Hickox was cleared by the medical department to undergo the formal misconduct hearing procedure. (Doc. 23, ¶ 11; Doc. 21-5, at 3). On December 2, 2019, Hickox was placed in Administrative Custody pursuant to DC-ADM 802, Section 1.B.1.b. (Doc. 23, ¶ 12; Doc. 21-4, at 2).

On December 5, 2019, Hickox was found guilty at a misconduct hearing, was given thirty days of disciplinary custody, and lost his job. (Doc. 23, ¶ 13; Doc. 21-5, at 4). On December 17, 2019, the Program Review Committee informed Hickox that there was nothing that precludes D-Roster inmates from the sanctioning guidelines set forth in DC-ADM 801, ultimately upholding the Hearing Examiner's decision and sanctions. (Doc. 23, ¶ 14; Doc. 21-5, at 6). On January 7, 2020, Superintendent Marsh upheld the Hearing Examiner's decision. (Doc. 23, ¶ 15; Doc. 21-5, at 8).

IV.     **DISCUSSION**

Hickox asserts a federal civil rights claim brought pursuant to 42 U.S.C. § 1983. Section 1983 provides a private cause of action with respect to violations of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

5

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To make a § 1983 claim, a plaintiff must establish that a defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). Hickox brings claims under the First and Eighth Amendments of the United States Constitution. (Doc. 10, at 8-11).[2] These protections are incorporated against state actors through the substantive due process clause of the Fourteenth Amendment. *Louisiana ex rel. Francis v. Resweber,* 329 U.S. 459, 463 (1947).

Defendants submit that they are entitled to summary judgment on three grounds. First, they assert that they are shielded by qualified immunity because they were performing their job duties as trained, and conduct similar to theirs has been upheld by the Third Circuit Court of Appeals. (Doc. 22, at 3-8). Second, they submit that Hickox's Eighth Amendment claim must fail because his custodial conditions were not atypical of incarceration in general. (Doc. 22, at 8-10). Third, they state that Hickox's retaliation claim is duplicative of his retaliation claim and so they should be combined, and that this claim must fail because Defendants had a legitimate non-retaliatory reason for their actions. (Doc. 22, at 10-13).

---

[2] Hickox challenges the process by which he was disciplined in his Brief in Opposition to Defendants' Motion for Summary Judgment. (Doc. 26, at 5-6). However, no procedural due process claim appears in his Amended Complaint, so the Court will not consider the adequacy of the disciplinary process at this juncture. (Doc. 26, at 5-6); *see McMahon v. Salmond,* 573 F. App'x 128, 135 (3d Cir. 2014) (affirming a district court's decision not to consider the plaintiff's retaliation claim in a case where the district court concluded that the plaintiff had not pleaded such a claim in the operative complaint).

A. DEFENDANTS ESTABLISH THAT HICKOX'S EIGHTH AMENDMENT RIGHTS WERE NOT VIOLATED.

Defendants submit that they are entitled to summary judgment on Hickox's Eighth Amendment claim because Hickox fails to satisfy the objective and subjective prongs of a conditions of confinement claim. (Doc. 22, at 8-9). Hickox does not show that he was confined in a way which was atypical of prison conditions or which deprived him of basic human needs, according to Defendants. (Doc. 22, at 9-10). Furthermore, Defendants assert that Hickox provides no evidence that they acted with a sufficiently culpable state of mind. (Doc. 22, at 10).

Hickox avers that he suffered hardship which was atypical of ordinary prison life. (Doc. 26, at 6). As a mentally ill inmate, Hickox asserts that he should have been subjected to the disciplinary process outlined in DC-ADM-801. (Doc. 26, at 6). Defendants entered a settlement agreement which requires them to follow this policy and they conducted cruel and unusual punishment by not following the policy, according to Hickox. (Doc. 26, at 6-7).

To establish an Eighth Amendment conditions of confinement claim, a plaintiff must show that he was deprived of "the minimal civilized measure of life's necessities." *Young v. Quinlan,* 960 F.2d 351, 359 (3d Cir. 1992). "The Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs, such as the basic human need for reasonable safety, adequate physical space, and the need for some degree of ventilation and fresh air." *Caldwell v. Luzerne County Corrections Facility Management Employees*, 732 F. Supp. 2d 458, 470 (M.D. Pa. 2010) (citing *Helling v. McKinney,* 509 U.S. 25, 32, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)). However, the Eighth Amendment does not mandate that prisons be free

of discomfort. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citing *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). "No static test determines whether conditions of confinement are 'cruel and unusual.' These terms must 'draw [their] meaning from the evolving standards of decency that mark the progress of a maturing society.'" *Tillery v. Owens,* 719 F.Supp. 1256, 1261 (W.D. Pa. 1989) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)).

The plaintiff must prove that (1) the deprivation was sufficiently serious; and (2) the prison official acted with deliberate indifference in subjecting him to that deprivation. *Griffin v. Vaughn,* 112 F.3d 703, 709 (3d. Cir. 1997). Deliberate indifference is subjective and requires that defendants know of and disregard an excessive risk to health and safety. *Johnson v. Wetzel,* 209 F. Supp. 3d 766, 778-79 (M.D. Pa. 2016). To infer such knowledge, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir 2001) (quoting *Farmer,* 511 U.S. at 837).

First, the record establishes that Hickox was never confined in the RHU during the time period at issue. (Doc. 21-6, at 3). Hickox's cell history shows that he was transferred from the general population to a Psychiatric Observation Cell ("POC") on December 2, 2019. (Doc. 21-6, at 3). After four days, Hickox was transferred to the Diversity Treatment Unit ("DTU"), where he stayed until January 28, 2020. (Doc. 21-6, at 3). Hickox also testified to being placed in the DTU as a result of his misconduct. (Doc. 21-1, at 26-27).

When presented with a mentally ill inmate's claim that his mental health issues were exacerbated by his being confined in the RHU, the United States District Court for the Western District held that, without more, the RHU's "harsh conditions of confinement" do

8

not violate the Eighth Amendment. *Norris v. Davis*, 2011 WL 5553633, at *4, 6 (W.D. Pa. Nov. 15, 2011). The court explained that it is well-established that reasonable discipline in state prisons cannot be supervised by the Federal courts. *Norris*, 2011 WL 5553633, at *4. "It is only when confinement becomes so foul, so inhuman, and so violative of the basic concepts of decency that a federal court should interfere with prison official who purportedly have the experience and expertise in matters of prison discipline." *Norris*, 2011 WL 5553633, at *4. The plaintiff, who as a mentally ill individual was regularly treated by a psychiatrist while confined in the RHU, did not state a claim for a violation of his rights as protected by the Eighth Amendment. *Norris*, 2011 WL 5553633, at *2, 7.

Here, the record establishes that Hickox was not subjected to RHU, but rather was held in DTU. (Doc. 21-1, at 26-27; Doc. 21-6, at 3). Hickox testifies that when he was in the DTU he had access to the medical and mental health departments, he could leave his cell multiple times per day for group activities and to shower, and he could go to the yard in the afternoon. (Doc. 21-1, at 27-28). Hickox states that "because of your mentally ill status the Department of Justice had required them to set this up like this." (Doc. 21-1, at 27-28). Because "the federal and state Pennsylvania courts unanimously have found that the harsh conditions of confinement in the various restrictive housing units in the Pennsylvania state institutions … without more, does not violate the Eighth Amendment," Hickox fails to present evidence sufficient to raise a genuine issue of material fact as to his Eighth Amendment claim. *See Norris*, 2011 WL 5553633, at *6 (collecting cases). The plaintiff in *Norris* was also mentally ill and was confined to more restrictive housing than that experienced by Hickox. *Norris*, 2011 WL 5553633, at *2. The confinement in *Norris* did not violate the plaintiff's Eighth Amendment rights. *Norris*, 2011 WL 5553633, at *2. Since the record fails

9

to show that Hickox was exposed to conditions more harmful than mere placement in restrictive housing, Defendants are entitled to summary judgment on Hickox's Eighth Amendment claim. *See Norris*, 2011 WL 5553633, at *2-7.

### B. DEFENDANTS ESTABLISH THAT HICKOX'S FIRST AMENDMENT RIGHTS WERE NOT VIOLATED.[3]

Defendants assert that they are entitled to summary judgment on Hickox's First Amendment claim because Hickox's complaint of sexual abuse and harassment was frivolous so that act was not a protected activity. (Doc. 22, at 12). Furthermore, Hickox's First Amendment claim must fail because there is no evidence that he suffered any physical harm that was atypical of prison conditions, according to Defendants. (Doc. 22, at 13). Finally, Defendants submit that their conduct was not in retaliation for Hickox making a valid claim – so a protected activity – but rather for him making a false claim to staff. (Doc. 22, at 13). Hickox states that he denies making a false complaint of sexual abuse and retaliation. (Doc. 26, at 7).

In order to establish a *prima facie* case of First Amendment retaliation, a plaintiff must show: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.,* 463 F.3d 285, 296 (3d Cir. 2006); *see also Cardenas v. Massey,* 269 F.3d 251, 263 (3d Cir. 2001); *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000). "Government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts

---

[3] All parties agree that Hickox's First Amendment and retaliation claims should be combined. (Doc. 22, at 11; Doc. 26, at 7).

if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000). When a retaliation claim arises from a charge of misconduct, "most prisoners' retaliation claims will fail if the misconduct charges are supported by the evidence." *Watson v. Rozum*, 834 F.3d 417, 425 (3d Cir. 2016).

It is undisputed that Hickox's allegation of sexual abuse was investigated by Lt. Karabinos, who determined that the allegation was unfounded. (Doc. 23, ¶ 5, 6; Doc. 27, ¶ 5; Doc. 21-7, at 3-5). Karabinos interviewed witnesses and staff, including the staff member who was in sole possession of the key to the closet where the alleged abuse occurred. (Doc. 21-7, at 4). Karabinos learned from that witness that the closet was locked at the time of the alleged abuse. (Doc. 21-7, at 4). Evidence shows that Karabinos also reviewed video and correspondence. (Doc. 21-7, at 5). Karabinos concluded that Hickox's sexual abuse allegation was unfounded "due to a staff confirming that no one entered the utility closet and the DIVAR Video confirming that staff member was in that area at time of the alleged abuse." (Doc. 21-7, at 5). This constitutes a sufficient quantum of evidence to demonstrate that the discipline imposed on Hickox was reasonably related to a legitimate penological interest. *See Watson*, 834 F.3d at 426. Hickox identifies no evidence in support of his allegation that the investigation's results were faulty, so fails to raise a genuine issue of material fact that he engaged in constitutionally protected conduct. (Doc. 26). As such, Defendants are entitled to summary judgment on Hickox's First Amendment retaliation claim.

V. **CONCLUSION**

For the reasons set forth in this Memorandum Opinion, Defendants' Motion for Summary Judgment is **GRANTED.** (Doc. 20). The Clerk of Court shall be directed to close

this case. Therefore, Plaintiff's Motion for a Protective Order is **DENIED AS MOOT**. (Doc. 15).

      An appropriate Order shall follow.

**Dated: April 7, 2021**　　　　　　　　　　　　　　　*s/ Karoline Mehalchick*
　　　　　　　　　　　　　　　　　　　　　　　　　　**KAROLINE MEHALCHICK**
　　　　　　　　　　　　　　　　　　　　　　　　　　**United States Magistrate Judge**